# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| **KSA ELECTRONICS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Civil Action No.** |
| **v.** | ) | **15-10848-FDS** |
| | ) | |
| **M/A-COM TECHNOLOGY** | ) | |
| **SOLUTIONS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

## MEMORANDUM AND ORDER ON
## DEFENDANT'S MOTION TO DISMISS

**SAYLOR, J.**

This is a contract dispute between an independent sales representative and a microchip manufacturer. Jurisdiction is based on diversity of citizenship. Plaintiff KSA Electronics has brought suit against defendant M/A-Com Technology Solutions for breach of a written contract, breach of an oral contract, and various other claims under state law.

M/A-Com Technology Solutions has filed a motion to dismiss, in whole or in part, six of the eight counts of the complaint. For the following reasons, the Court will grant in part and deny in part the motion to dismiss.

## I.    Background

### A.    Factual Background

KSA is a California corporation with a principal place of business in San Diego, California. (Am. Compl. ¶ 2). It is an "independent sales representative, working on a straight commission basis, on behalf of its principals, manufacturers such as [M/A-Com], to create

markets for and sales of the principals' products, in return for compensation, based solely upon sales made." (*Id.* ¶ 5).

M/A-Com Technology Solutions is a Delaware corporation with a principal place of business in Lowell, Massachusetts. (*Id.* ¶ 3). It "manufactures and sells microchips, and related component parts and engineering services, for use in miscellaneous technology industries." (*Id.* ¶ 6).

In June 2010, KSA and M/A-Com entered into a written Sales Representative Agreement ("SRA"). Under the SRA, KSA agreed to act as the authorized sales representative of M/A-Com in an exclusive territory that consisted of southern California, southern Nevada, New Mexico, and Arizona. (*Id.* ¶ 11; SRA Schedule A). Pursuant to the written contract, M/A-Com "agreed to compensate KSA with a sales commission for all sales activities by KSA within [the exclusive territory], at varying rates, depending on a number of factors stated in the [written contract]." (Am. Compl. ¶ 12). It is undisputed that the written contract contained a choice-of-law provision that provided that the "Agreement, and each and every purchase and sale or other contract hereunder or pursuant hereto, shall be construed and the rights and liabilities of the parties hereunder shall be determined in accordance with the laws of the Commonwealth of Massachusetts, U.S.A., without giving effect to the conflict of laws principles thereof." (SRA ¶ 15).

The complaint alleges that there "was one mutually agreed-upon modification of [the written contract] in or about June 2013, for new and sufficient consideration as to the sales commission percentage for *Remec Broadband Wireless*, which was increased to 2% from the 0.75% called for by the contract." (Am. Compl. ¶ 12). M/A-Com contends that the written

contract was modified by an amendment on May 30, 2013.  (Def.'s Mem. Support Mot. Summ. J. 4, 12; Def.'s Request Judicial Notice 1).

From June 2010 to June 2014, KSA acted as the authorized sales representative of M/A-Com in the assigned territory.  (Am. Compl. ¶ 11).  It "performed all terms, conditions, covenants and promises required of it" by the contract.  (*Id.* ¶ 13).  It "developed new business opportunities for [M/A-Com's] products and capabilities, solicited and procured sales, and maintained accounts, many which will produce future sales, on a long-term basis for [M/A-Com]."  (*Id.*).  According to the complaint, KSA procured on behalf of M/A-Com known sales of $1 million in 2010, $11 million in 2011, $11 million in 2012, $8 million in 2013, and an unknown sum for 2014.  (*Id.* ¶ 8).  However, in September 2013, KSA allegedly became aware that M/A-Com had not been paying all commissions owed to it.  (*Id.* ¶ 14).  KSA complained about not being paid, and M/A-Com "began intentionally delaying and failing to pay further commissions to KSA for various sales to various customers in [the territory]."  (*Id.*).

The complaint alleges that in June 2014, KSA's "services were purportedly terminated by" M/A-Com.  (*Id.* ¶ 11).  According to the complaint, "there are millions of dollars in further sales of [M/A-Com] products, of which [M/A-Com] failed to notify KSA, and for which [it] did not pay any sales commissions to KSA, to which KSA is entitled . . . ."  (*Id.* ¶ 8).  After the "purported termination," M/A-Com sent KSA a "check in the approximate sum of $113,000 for prior shortages on commission payments during the life of the written contract."  (*Id.* ¶ 14).  The complaint alleges that M/A-Com terminated the contract in response to KSA's demand for payment on unpaid commissions.  (*Id.* ¶ 15).  The termination allegedly occurred when KSA was "on the cusp of . . . landing monumental future sales based on [r]eference designs and design wins for customers with [its] territory."  (*Id.*).  The complaint alleges that the termination was

retaliatory, in violation of the implied covenant of good faith and fair dealing.  (*Id.*).  The complaint alleges that because the termination was in bad faith, KSA is entitled to commissions for future (post-termination) sales that result from its sales activities.  (*Id.* ¶ 17).

The complaint also alleges that the parties entered into an oral contract in December 2013 "to have KSA render [M/A-Com's] marketing and sales services to procure *NRE* for the development of a custom IC module for its customer, *Qualcomm, Inc.*"  (*Id.* ¶ 21).  It alleges that the agreement was corroborated and ratified in a February 11, 2014 e-mail from Jack Kennedy, one of M/A-Com's principal officers.  (*Id.* ¶ 22).  M/A-Com allegedly paid at least some sales commissions under the oral agreement.  (*Id.*).

###    B.    Procedural Background

On October 1, 2014, KSA filed a complaint in this action in the Southern District of California.  On October 23, 2014, M/A-Com moved to transfer the case to the District of Massachusetts on the ground that the underlying contract contained a mandatory forum-selection clause.  On March 6, 2015, the court in California granted the motion to transfer venue because "the parties entered into an enforceable forum-selection clause, there is no extraordinary public interest in litigating the matter in California, and [d]efendant ha[d] properly moved to transfer venue . . . ."  (Order Granting Motion Transfer Venue, Docket No. 19).

On April 10, 2015, KSA filed an amended complaint.  The amended complaint alleges eight counts:  (1) breach of written contract; (2) breach of oral contract; (3) violation of California Civil Code § 1738.10, et seq.; (4) violation of Mass. Gen. Laws ch. 104 §§ 7-9; (5) violation of Mass. Gen. Laws ch. 93A; (6) quantum meruit (or unjust enrichment); (7) promissory estoppel; and (8) accounting.  M/A-Com has moved to dismiss, in part or whole, Counts 1, 2, 3, 6, 7, and 8 of the amended complaint.

II.      **Legal Standard**

On a motion to dismiss, the Court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)).  To survive a motion to dismiss, the complaint must state a claim that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556).  Dismissal is appropriate if the facts as alleged do not "possess enough heft to show that plaintiff is entitled to relief."  *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (alterations omitted) (internal quotation marks omitted).

III.     **Analysis**

A.      **Claim Under California Civil Code**

In Count 3, the amended complaint alleges that the services provided by KSA are subject to the provisions of California Civil Code § 1738.10, *et seq.*  Pursuant to California Civil Code § 1738.15, a "manufacturer, jobber, or distributor who willfully fails to enter into a written contract as required by this chapter or willfully fails to pay commissions as provided in the written contract shall be liable to the sales representative in a civil action for treble the damages proved at trial."  Count 4 alleges a violation of Mass. Gen. Laws ch. 104 §§ 7-9.  Under Mass. Gen. Laws ch. 104 § 9, a "principal who willfully or knowingly fails to comply with provisions

relating to the prompt payment of commissions set forth in section eight shall be liable to the sales representative in a civil action for the principal amount of the commissions owed and for an additional sum up to three times the amount of commissions and for reasonable attorney's fees and court costs."

M/A-Com has moved to dismiss the California statutory claim as barred by the choice-of-law provision in the contract, which requires the application of Massachusetts law.  The written contract provides that "[t]his [a]greement, and each and every purchase and sale or other contract hereunder or pursuant hereto, shall be construed and the rights and liabilities of the parties hereunder shall be determined, in accordance with the laws of the Commonwealth of Massachusetts, U.S.A., without giving effect to the conflict of laws principles thereof."  (SRA ¶ 15).  In interpreting contracts with a choice-of-law provision, "Massachusetts courts will uphold the parties' choice as long as the result is not contrary to public policy."  *Hodas v. Morin*, 442 Mass. 544, 550 (2004) (quoting *Steranko v. Inforex, Inc.*, 5 Mass. App. Ct. 253, 260 (1977)). Massachusetts courts apply the "two-tiered analysis" of the Restatement (Second) of Conflict of Laws § 187 (1971) to determine

> [1] whether the State chosen by the parties has a "substantial relationship" to the transaction and, [2] whether "'application of the law of the chosen state . . . would be contrary to a fundamental policy of a state . . .  which has a materially greater interest than the chosen state' and is the State whose law would apply . . . 'in the absence of an effective choice of law by the parties.'"

*Feeney v. Dell, Inc.*, 454 Mass. 192, 206 (2009) (quoting *Hodas*, 442 Mass. at 550).

KSA does not contend that Massachusetts has no "substantial relationship" to the transaction.  Rather, it appears to contend that application of Massachusetts law would be contrary to a fundamental policy of California, which has a materially greater interest in this matter than Massachusetts.  First, it is unclear how application of Massachusetts law would be

"contrary to a fundamental policy" of California.  Both Massachusetts and California have statutes that protect sales representatives.  Although the California statute requires treble damages, the Massachusetts statute allows (but does not require) treble damages.  Under the circumstances, application of Massachusetts law would not appear to be "contrary to a fundamental policy" of California.

Second, KSA does not explain how California has a "materially greater interest" than Massachusetts in this dispute.  *See Feeney*, 454 Mass. at 206.  Defendant is a Massachusetts company that has a written contract for the sale of its products in four Western states, only one of which is California.  Both California and Massachusetts have enacted statutes that bar waiver of the statutory provisions protecting sales representatives.  Pursuant to California Civil Code § 1738.13(e), "[n]o contract shall contain any provision which waives any rights established pursuant to this chapter.  Any such waiver is deemed contrary to public policy and void."  Under Mass. Gen. Laws ch. 104 § 9, "[n]o provision of sections seven to nine may be waived, whether by express waiver or by an attempt to make a contract or agreement subject to the laws of another jurisdiction.  A waiver of any provision of sections seven to nine shall be void."  The waiver provisions in the two states suggest that both states have strong interest in the application of their respective laws.

KSA cites *Reicher v. Berkshire Life Ins Co. of Am.*, 360 F.3d 1 (1st Cir. 2004) in support of its position.  In *Reicher*, 360 F.3d at 6, the First Circuit held that under Massachusetts choice of law rules, the law of Maryland applied to an insurance dispute.  *Id.* at 6.  The court explained that in contrast to Massachusetts law, Maryland law "expressly states that health insurance policies delivered in Maryland, including disability insurance, may not be covered by the law of any state other than Maryland."  *Id.*  As a result, the First Circuit upheld dismissal of the

plaintiff's Massachusetts state-law claim.  *Id.* at 6-7.  The *Reicher* case is readily distinguishable from the present case because it did not involve a contractual choice-of-law provision.

KSA also cites *Howting-Robinson Assoc's, Inc. v. Bryan Custom Plastics*, 65 F. Supp. 2d 610 (E.D. Mich. 1999).  In *Howting-Robinson*, the Eastern District of Michigan held that a requirement in the Michigan Sales Representatives Act that commissions must be paid promptly upon termination of contracts applied to a commission dispute even though the contract contained an Ohio choice-of-law provision.  *Id.* at 613.  The *Howting-Robinson* case is also readily distinguishable.  First, the court determined that Ohio did not have a "substantial relationship" to the transaction.  *Id.*  There is no question that Massachusetts has a substantial relationship to this dispute, and indeed KSA does not argue otherwise.  Second, the court determined that Ohio law did not contain the protection or provision that the Michigan law embodied.  As a result, the court determined that application of Ohio law would cause a "substantial erosion of the quality of protection that the [Michigan law] would otherwise provide."  *Id.*  Such a "substantial erosion" is not present here, where Massachusetts provides a similar, if not precisely identical, protection to the one provided in California.  As noted, the only difference between the protections is that California law mandates treble damages and Massachusetts law makes them optional.

Accordingly, M/A-Com's motion to dismiss will be granted as to Count 3, KSA's claim under California Civil Code § 1738.10, *et seq.*

## B. <u>Other Claims</u>

M/A-Com has also moved to dismiss, in whole or in part, Counts 1, 2, 6, 7, and 8.  Count 1 alleges breach of the written contract.  Count 2 alleges breach of an oral contract.  With respect to Count 1, M/A-Com contends that it should be dismissed to the extent that it seeks

commissions for future services because the written contract unambiguously bars recovery of compensation for future sales. As to Count 2, M/A-Com contends that oral contracts are barred by the express terms of the contract. The counts as pleaded appear to state claims upon which relief can be granted, and defendant's contentions appear to raise factual questions that are more suitable for resolution on a full factual record. Therefore, the motion to dismiss will be denied with respect to Counts 1 and 2.[1]

Counts 6 and 7 allege alternative theories of quantum meruit and promissory estoppel. Pursuant to Fed. R. Civ. P. 8(d)(2), a "party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." Fed. R. Civ. P. 8(d)(3) permits a party to "state as many separate claims or defenses as it has, regardless of consistency." M/A-Com contends that "a written contract governing the parties' relations requires dismissal of these claims." (Defs.' Mem. Support Mot. Dismiss 17). The complaint properly pleads quantum meruit and promissory estoppel in the alternative, and the counts as pleaded appear to state claims upon which relief can be granted. Again, the contentions raised by defendant in its motion to dismiss appear to raise factual questions that are more suitable for resolution on a full record. Therefore, the motion to dismiss will be denied with respect to Counts 6 and 7.

---

[1] There are substantial questions as to the merits of Count 1 to the extent that it seeks compensation for future sales pursuant to the implied covenant of good faith and fair dealing. The amended complaint alleges that defendant's termination was wrongful because it was retaliatory. As a result, it alleges that the termination breached the implied covenant of good faith and fair dealing. Under Massachusetts law, a covenant of good faith and fair dealing is implied in every contract. *UNO Restaurants, Inc. v. Boston Kenmore Realty Corp.*, 441 Mass. 376, 385 (2004). The covenant provides that "neither party shall do anything that will have the effect of destroying or injuring the rights of the other party to receive the fruits of the contract." *Anthony's Pier Four, Inc. v. HBC Associates*, 411 Mass. 451, 471-72. The implied covenant may not, however, be invoked to create rights and duties not contemplated by the provisions of the contract or the contractual relationship. *UNO Restaurants*, 441 Mass. at 385-86; *AccuSoft Corp. v. Palo*, 237 F.3d 31, 45 (1st Cir. 2001). Defendant contends that the contract specifically contemplated termination by either party on 60 days' notice for "any reason." However, the issue cannot be resolved on a motion to dismiss, and must await development of a factual record.

It appears that Count 8 alleges an accounting pursuant to the written contract and oral agreement.  M/A-Com contends that Count 8 should be dismissed because there are no allegations that the parties were in a fiduciary relationship.  Count 8 does not appear to present any unique claims.  Rather, it appears to seek a remedy that the complaint alleges is available pursuant to the written contract and oral agreement.  Therefore, Count 8 will be read to allege a remedy instead of a separate claim, and the motion to dismiss will be denied.

**IV.**   **Conclusion**

For the foregoing reasons, M/A-Com's motion to dismiss is GRANTED as to Count Three, and is otherwise DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: July 17, 2015